Wyly, J.,
dissmimg. In October, 1873, the tax collector sold a plantation in the parish of Carroll known as the “ Mounds Place,” belonging to R. Tubman Keene, and Charles McAlister, plaintiff herein, became the purchaser for the price of $1806 25, being the full amount of the taxes, penalties and costs due thereon for the year 1871.
Subsequently, to wit: in June, 1874, defendant seized and advertised said property for the taxes, penalties and costs due thereon for the year 1872; thereupon plaintiff brought this suit to enjoin the sale on the grounds stated in the petition, to wit:
First — The State having sold him the land for the taxes of 1871, which was the first lien, lost thereby the privilege for the taxes of 1872, which was next in rank.
Second — There has been no legal seizure and advertisement of the property.
The court dissolved the injunction with one hundred per cent, damages, and plaintiff appeals.
In October, 1873, when the tax collector sold the lands to McAlister for taxes, penalties and costs due thereon for the year 1871, the taxes of 1872 were due.
Under sections 66, 67, 68 of the act No. 42 of the acts of 1871, the lands in question had been forfeited to the State. And in Morrison v. Larkin, tax collector, 26 An. this court decided that under the revenue acts of 1871 and 1873, such lands could be sold by the tax collector for the total amount of taxes, penalties and costs due thereon to the State, reserving to the owner the right of redemption stated in section six of act 47 of the acts of 1873; and when the bid is for less than the total amount due the State for taxes, penalties and costs, the tax col *427 lector can not adjudicate the property, because in such case the law provides, “ tlie bid shall be rejected.” Section 9 of act 47 of tbe acts of 1873.
Considering sections 38, 55, 57, 59, 60, 69 of act 42 of the acts of 1871, together with the title of said act, there can be no doubt that the tax collector can collect taxes on the delinquent lists, and for this purpose he can sell lands forfeited to the State, provided the amount bid is sufficient to pay all the taxes, penalties and costs due to the State. Upon payment of such sum the owner could redeem the land, the title of which, by the filing and recording of the delinquent list in the Auditor’s office, vested in the State; and it can not be presumed that the authors of the statute in question contemplated that a stranger should acquire from the tax collector a title to forfeited lands on terms more favorable than the former owner, who could only redeem by paying the State all of the taxes, penalties and costs due thereon. Nor can the statute be interpreted so as to authorize the tax collector to sell such property for less than the amount due the State, for this would involve the loss to the latter of a part of the revenues the tax collector was charged to collect. Without special authority the tax collector can not adjudicate forfeited lands for less than the total amount due the State thereon, and such authority is not to be found in the statutes before us. But this question, which has been settled, as I understand, in the cases of Morrison v. Larkin, 26 An. and Garner, administrator, v. K. K. Anderson, tax collector, lately decided, is not raised by the parties, although lying at the foundation of the action.
■ If McAlister has no title because the tax collector had no right, in October, 1873, to sell him lands forfeited to the State in December, 1871, for less than the total amount of the taxes and penalties due up to the time of the sale, he would have no interest to raise this litigation and to take out the injunction. But as the defendant has not questioned McAlister’s title, or objected to his want of interest, this court will not raise the question, however pertinent to the case. Taking the question then as presented, did McAlister, who bought from the State forfeited lands in October, 1873, paying the price of adjudication, $1806 25, the total amount of taxes and penalties for the year 1871, incur the additional obligation to pay the taxes of 1872, which accrued while the title of the property remained in his vendor, the State í I think not. The bid of McAlister was the aggregatio mentkm between the buyer and the seller. McAlister paid the amount of his bid, and the State made the title to him. She is bound as warrantor to maintain the title she has conveyed to him; and she can not claim the rescission of the sale without previously tendering to McAlister the $1806 25 which she received as the price of adjudication.
*428 In regard to the obligations of a seller, the State, under our law, occupies no better position than any other vendor. She can not make a title to-day and destroy it to-morrow, on the pretext that while the title was in her, as from December, 1871, up to the sale in October, 1873, taxes had accrued in her own favor. McAlister certainly owed the State nothing on these lands at the time of the adjudication, but the amount of his bid, which he paid; and assuming the validity of the sale, this is what the State agreed to accept as the equivalent for the lands. Now if the court compels him to pay the additional sum of $1200, the amount claimed for taxes accruing in 1872, while the State was the owner of the lands, it will virtually make a new contract for him, or compel him to perform a stipulation not mentioned in the sale. When the buyer paid the $1806 25, the price of the adjudication, he discharged fully all his obligations resulting from his bid; and when the State accepted it and conveyed to him her title to the lands she incurred the legal obligations of every seller to maintain the vendee in the enjoyment of the thing which she gave as an equivalent for the price paid hy him.
These propositions are elementary, and there is no escape from the conclusion to which they lead, assuming that the State was the owner of the lands at the time of the sale to McAlister. That forfeited lands belong to the State was expressly decided by this court in the case of Morrison v. Larkin, tax collector, 26 An., and the same doctrine was recognized and affirmed in the case of G-arner, administrator, v. E. K. Anderson, tax collector, lately decided. Indeed this is declared by the law in precise terms. Section 68 of act 42 of the acts of 1871 provides: “ That the said delinquent lists, or copies and verifications, when so filed in the office of the Auditor of Public Accounts, shall be entered by him in a record kept for that purpose, and shall vest from the day of filing a title to the lands and lots therein returned, in the State of Louisiana, which shall be impeachable only on proof that taxes for nonpayment whereof the lands were returned forfeited, had been in fact paid to the collector before the return of the lists to the recorder.”
The right of redemption, however, was reserved to the owner by section 69. And by section 6 of act 47 of the acts of 1873, this right of redemption is reserved to the former owner for six months after the adjudication by the State of forfeited lands. The only reservation in the title which plaintiff received from the State, was the right of redemption reserved for six months in favor of E. Tubman Keene, the former owner of said lands, who seems to have neglected to exercise this right, and who sets up no claim to the property. In other respects the title is absolute and binds the State as warrantor.
*429 My conclusion is, assuming tbe validity of the sale which is not questioned, the State can not destroy by selling the property for taxes of 1872, the title which'she, as owner, made to the plaintiff in October, 1873, for the price of $1806 25. She can not keep the price and take back the lands, or which is the same thing, convey them to another. The right of disposition belongs to the owner. She can not keep the price and at the same time exercise this main element of ownership over these lands. I therefore dissent in this case.